IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2017 AUG -1  A 11: 38

| | |
|---|---|
| MAE R. WASHINGTON, | DEBRA P. HACKETT, CLK. |
| Plaintiff, | U.S. DISTRICT COURT |
| | MIDDLE DISTRICT ALA  Civil Action |

*versus*

BIO-MEDICAL APPLICATIONS
OF ALABAMA, INC., a foreign corporation,

Defendant.

2:17-cv-518-TFM

Jury Trial Demanded

## COMPLAINT

### Parties, Jurisdiction and Venue

1. Plaintiff Mae R. Washington is a citizen of the state of Alabama and a resident of Tallassee, Alabama.

2. Defendant Bio-Medical Applications of Alabama, Inc., is a corporate entity existing under the laws of the State of Delaware and having it principal place of business outside the state of Alabama.

3. Defendant Bio-Medical Applications of Alabama, Inc., does business by agent in the Northern Division of the Middle District of Alabama; it operates a renal dialysis clinic doing business as Fresenius Kidney Care at 1012 Friendship Road, Tallassee, Alabama.

4. The amount in controversy herein exceeds the sum of seventy five thousand dollars ($75,000.00), exclusive of interests and costs.

5. This Court has jurisdiction of this civil action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the plaintiff and the defendant and the amount in controversy exceeds $75,000, exclusive of interests and costs.

6. This civil action is properly venued in the Northern Division of the Middle District of Alabama, pursuant to 28 U.S.C. §1391.

### Allegations Common to All Claims

7. Beginning in or about November, 2016, plaintiff Mae Washington became a patient at the renal dialysis clinic (hereinafter "the clinic") operated by defendant Bio-Medical Applications of Alabama, Inc. (hereinafter "BMA"), d/b/a Fresenius Kidney Care, and located 1012 Friendship Road, Tallassee, Alabama.

8. In addition to suffering from renal disease that necessitated dialysis, Ms. Washington suffered from mild to moderate dementia and had ambulatory and balance problems that confined her to a wheelchair.

9. Between November, 2016, and June 2, 2017, Ms. Washington received renal dialysis three days per week at the clinic, each lasting approximately 3 to 4 hours.

10. Due to Ms. Washington's mental status, ambulatory and balance problems, among other things, Ms. Washington was a serious fall risk and should not be left unattended at any time.

11. BMA and its agents and employees at the clinic had direct and specific knowledge of the fact that Ms. Washington was a very serious, high fall risk patient and should not be left unattended from both Ms. Washington's medical records, but also from being specifically, directly and repeatedly told and warned of the danger to Ms. Washington posed by falls and that she should never be left unattended at the clinic.

12. On June 2, 2017, Mae Washington came to the clinic and received dialysis treatment, at the completion of which employees of BMA accompanied Ms. Washington to the lobby or waiting area, which has a hard tile floor, and left Ms. Washington unattended.

13. Subsequently, on June 2, 2017, Ms. Washington fell in lobby or waiting area of the clinic, striking her head on the hard tile floor.

14. In this fall, Ms. Washington received serious and debilitating traumatic head and brain injuries, including a subdural hematoma causing inter-cranial bleeding that required her to be immediately medically evacuated by airlift to a hospital in Montgomery for emergency treatment.

15. At the hospital, Ms. Washington was admitted to its intensive care unit, where she was treated for 3 to 4 days until her condition sufficiently stabilized. She remained in the hospital for two weeks, being released on or about June 16, 2017, but was readmitted to the hospital with complications from this injury on June 26, 2017.

2

16.    Since sustaining these neurological injuries in this fall at BMA's clinic, Ms. Washington has remained in a semi-comatose and non-responsive state.

17. Ms. Washington's injuries appear to be permanent and her doctors offer little hope that she will regain her normal, pre-accident neurologic functioning.

18.    In all of their interactions with Ms. Washington, including all of their actions and inactions alleged herein, the employees of BMA at the clinic were acting as agents of BMA and were acting within the line and scope of their employment with BMA; accordingly, BMA is responsible for all acts and omissions of its agents and employees, including those alleged herein under *respondeat superior* and/or principal-agent law.

19. BMA and its agents and employees:

    a.    failed to properly assess or evaluate Ms. Washington's condition, cognitive deficits, ambulatory and balance problems, and her susceptibility to falls and the danger of Ms. Washington falling at their clinic;

    b.    failed to listen to, credit and act in accordance with the warnings given them about the high risk and danger of Ms. Washington falling at their clinic;

    c.    failed to take proper precautions to prevent Ms. Washington from falling while at their clinic;

    d.    failed to properly accompany, attend and assist Ms. Washington while at their clinic to prevent her from falling;

    e.    left Ms. Washington unattended at the clinic with knowledge of the high risk and danger of her falling and knowledge of the serious danger posed to Ms. Washington if she should fall at the clinic;

    f.    failed to advise, instruct and warn its employees assigned to treat Ms. Washington on the day of the accident and those that otherwise directly interacted with Ms. Washington on the date of the accident of Ms. Washington's medical conditions; that she was at high risk of falling; that she should never be left unattended; and the serious risks to Ms. Washington's health and welfare posed by a fall at the clinic;

    g.    failed to provide sufficient training to their staff regarding the prevention of falls by high risk fall patients, such as Ms. Washington;

h. failed to hire, employ or retain a sufficient number of properly trained employees to provide the necessary attendance and assistance to their patients, including high fall risk patients, such as Ms. Washington;

i. failed to properly observe, attend, and monitor Ms. Washington while at their clinic; and

j. failed to prevent Ms. Washington's preventable fall at the clinic.

20. The negligent acts and omissions set forth above proximately caused serious, debilitating, painful injuries to Ms. Washington and defendant BMA is liable for the acts and omissions of its agents and employees under the doctrine of *respondeat superior*.

## FIRST CLAIM FOR RELIEF

20. Plaintiff realleges all allegations of the above paragraphs 1 through 20, inclusive.

21. In the aforesaid acts and omissions of the agents and employees of Bio-Medical Applications of Alabama, Inc., they and Bio-Medical Applications of Alabama, Inc. were guilty of negligence.

22. The negligence of Bio-Medical Applications of Alabama, Inc. and its agents and employees was a proximate cause of serious, debilitating, painful injuries to plaintiff Mae R. Washington.

WHEREFORE, plaintiff demands a judgment against Bio-Medical Applications of Alabama, Inc., for compensatory damages in an amount to be determined by a jury, the costs of this action, and such other relief as plaintiff may be entitled to.

## SECOND CLAIM FOR RELIEF

23. Plaintiff realleges all allegations of the above paragraphs 1 through 20, inclusive.

24. In the aforesaid acts and omissions of the agents and employees of Bio-Medical Applications of Alabama, Inc., they and Bio-Medical Applications of Alabama, Inc. were guilty of wantonness.

25. The wantonness of Bio-Medical Applications of Alabama, Inc. and its agents and employees was a proximate cause of serious, debilitating, painful injuries to plaintiff Mae R. Washington.

4

WHEREFORE, plaintiff demands a judgment against Bio-Medical Applications of Alabama, Inc., for compensatory damages in an amount to be determined by a jury; for punitive damages in an amount determined by the jury to be sufficient to punish this defendant and others like it and deter defendant and others from such wanton acts and omissions in the future; the costs of this action; and such other relief as plaintiff may be entitled to.

<u>THIRD CLAIM FOR RELIEF</u>

26. Plaintiff realleges all allegations of the above paragraphs 1 through 20, inclusive.

27. As a medical care provider, Bio-Medical Applications of Alabama, Inc. and its agents and employees owed a duty of care to their patient, Mae R. Washington.

28. In the aforesaid acts and omissions of the agents and employees of Bio-Medical Applications of Alabama, Inc., they and Bio-Medical Applications of Alabama, Inc. failed to use or employ the reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and ordinarily exercise in like cases.

25. The breach or breaches of the standard of care and the failure of Bio-Medical Applications of Alabama, Inc. and its agents and employees to discharge the duties they owed to their patient, Mae R. Washington was a proximate cause of serious, debilitating, painful injuries to plaintiff Mae R. Washington.

WHEREFORE, plaintiff demands a judgment against Bio-Medical Applications of Alabama, Inc., for compensatory damages in an amount to be determined by a jury, the costs of this action, and such other relief as plaintiff may be entitled to.

Griffin Sikes, Jr.
Attorney for Plaintiffs
Post Office Box 11234
Montgomery, Alabama 36111
Telephone: 334.233.4070
E-mail: sikeslawyer@gmail.com

5

/s/ James R. Bowles

James R. Bowles
Attorney for Plaintiffs
2 S Dubois Street
Tallassee, AL 36078
Telephone: 334.283.6548
E-mail: jamesrbowles@aol.com

Plaintiff demands trial by jury of all issues.

Griffin Sikes, Jr.

Note to Clerk:

Please serve the defendant by certified mail on their registered agent as follows:

BIO-MEDICAL APPLICATIONS OF ALABAMA, INC.
c/o C T CORPORATION SYSTEM
2 NORTH JACKSON ST.
SUITE 605
MONTGOMERY, AL 36104

6